IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bobby Gilbert, | ) | C/A No. 2:15-CV-3535-MGL-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Robert E. Word[1] | ) | |
| Joseph McFadden | ) | |
| Dante Wright, and | ) | |
| Thomas Sears | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The plaintiff, Bobby Gilbert ("Plaintiff"), is currently in the custody of the South Carolina

Department of Corrections ("SCDC") and housed at Lieber Correctional Institution ("LCI"). The

Plaintiff, appearing *pro se* and *in forma pauperis*, has filed this action pursuant to 42 U.S.C. §

1983 and the South Carolina Tort Claims Act, codified at S.C. Code § 15-78-10 through 15-78-

220 ("SCTCA"), against the above-captioned defendants ("Defendants").[2] (Dkt. No. 1 at 2.) The

Plaintiff seeks a jury trial, and compensatory and punitive damages from the Defendants.

(Compl. at 7, Dkt. No. 1.)

---

[1] The Plaintiff's Complaint spells the first defendant's surname as "Word." (Dkt. No. 1.) The
Defendants' counsel refers to the first defendant as "Ward," but no motion to correct the caption
was filed. Accordingly, the undersigned will refer to this defendant as "Word."

[2] The caption to the Plaintiff's Complaint does not list the South Carolina Department of
Corrections as a defendant, but names this entity as a defendant within the list of defendants set
out in the complaint. (Compl. ¶ 3.) The Complaint does not make specific allegations against
this entity, and no answer or responsive pleading was filed on behalf of it. To the extent that the
Plaintiff intended to name this entity as a defendant, the entity, as a state agency, would be
entitled to Eleventh Amendment immunity. *Williams v. Brockenberry*, C.A. No. 5:16-3192-
BHH-KDW, 2016 WL 7187444, at *2 (D.S.C. Nov. 18, 2016), report and recommendation
adopted on Dec. 9, 2016. (Dkt. No. 23.)

1

This matter is before the court on the Defendants' Motion for Summary Judgment and the Plaintiff's Rule 56(d) Motion.  (Dkt. Nos. 36 & 66.)  On March 15, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the Defendants' Motion. (Dkt. No. 36.)  After the court granted two extensions of time to the Plaintiff, he filed a Response in Opposition to Defendants' Motion on May 31, 2016.  (Dkt. No. 52.)  The Defendants filed a Reply (Dkt. No. 53), and the Plaintiff filed a Sur Reply (Dkt. No. 54).  On November 7, 2016, the Plaintiff filed a "Rule 56(d) Motion," and the Defendants filed an opposition thereto on December 13, 2016. (Dkt. Nos. 66, 70.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.  For the reasons stated herein, the court recommends that the Defendants' Motion for Summary Judgment be granted in part and denied in part and that the Plaintiff's Rule 56(d) Motion be denied.

## FACTS

On June 8, 2012, the Plaintiff and inmate Carl Pollen ("Pollen") were housed together in Cell #247 in LCI's Special Management Unit ("SMU").[3]  (Compl. ¶ 8.)  That evening, the Plaintiff was lying on his bed, and Pollen "was pacing around the room talking" on a cell phone. (Pl. Dep. 77:6-7; 82:8-10, Dkt. No. 36-5.)  At approximately 12:25 a.m., Defendant Dante

---

[3] Appended to the Plaintiff's complaint is an Affidavit stating that the Plaintiff realleges and incorporates by reference the allegations set forth in the complaint.  (Dkt. No. 1-1.)  Accordingly, the court will consider the Plaintiff's complaint as a verified complaint.  In this Circuit, verified complaints by *pro se* litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citations omitted).

Wright ("Wright"), a SCDC correctional officer assigned to LCI, approached Cell #247 to make a security check. (Compl. ¶¶ 6, 10; Wright Aff. ¶¶ 1, 3, & 5, Dkt. 36-7; SCDC Incident Report dated June 8, 2012 ("Incident Report"), Dkt. No. 36-2 at 11.) As Wright looked into Cell #247, he saw "Pollen rush to block the window[.]" (Wright Aff. ¶ 5.) Pollen said, "[W]hat the in 'F' are you looking at!" or "what the hell you looking in here for?" (Compl. ¶ 10; Pl. Dep. 77:17-19; Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11.) The Plaintiff recalls that Wright opened the cell's food serving window and said to Pollen, "what in the 'F' you said you white mother 'F'? Step back and get against the 'F'ing wall before I spray your 'A'!" (Compl. ¶ 10; *see also* Pl. Dep. 77:20.) Wright claims that when he opened the cell's food serving window, he saw the Plaintiff lying on his bed using a cell phone. (Wright Aff. ¶ 5; *see also* Incident Report, Dkt. No. 36-2 at 11.)

Pollen complied with Wright's verbal order; Wright then turned to the Plaintiff and stated: "[G]et your 'A' up and stand against the wall, if you move I will spray your 'A' too!" (Compl. ¶ 11.) The Plaintiff complied. (*Id.*). Wright has averred that he "ordered Pollen to step aside and for Gilbert to stand up." (Wright Aff. ¶ 5.) The Plaintiff claims that Wright said: "I've been looking for a reason to get you two again, now that you've given me the chance, I will do this the right way. It's not going to be like the last time, you will get charged for this one!" (Compl. ¶ 11.) Wright denies that he "harass[ed]" Pollen and the Plaintiff. (Wright Aff. ¶ 6.)

Wright radioed for assistance while holding a can of pepper spray at the cellmates. (Compl. ¶ 11.) Wright claims he saw a sock which appeared to be stuffed with something and looked suspicious, so he radioed for assistance. (Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11.) The defendant Thomas Sears ("Sears") and four other guards responded to Cell #247.

3

(Compl. ¶ 12; Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11.)  Wright told Sears to handcuff the Plaintiff, the Plaintiff came to the cell door to be handcuffed, and Sears secured the Plaintiff's hands behind his back "with a handcuff/leash set-up."  (Compl. ¶ 12; Pl. Dep. 78:10-15, 24-25; Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11; Sears Aff. ¶ 5, Dkt. No. 8.)  It is undisputed that the Plaintiff complied with the order (from Wright or Sears) to come to the cell door to be handcuffed.  (Compl. ¶ 12; Wright Aff. ¶ 5.)

Wright and Sears saw Pollen begin to flush a green leafy substance (marijuana) from the sock down the toilet. (Wright Aff. ¶ 5; Sears Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11.) Wright claims that Pollen told the Plaintiff to block the cell window so Pollen could flush drugs down the toilet.  (Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11.)  The Plaintiff claims that Pollen started to fake like he was flushing something down the toilet.  (Pl. Dep. 79:8-11.) Wright administered a 2 second burst of pepper spray (the first administration of pepper spray) into the cell to prevent Pollen from flushing the drugs down the toilet.  (Wright Aff. ¶ 5; Sears Aff. ¶ 4; Incident Report, Dkt. No. 36-2 at 11.)  The Plaintiff claims the first administration of pepper spray was directed at him; the Plaintiff states:  "Immediately after the handcuff was on [the Plaintiff,] Wright attacked him from behind by spraying him with a prolonged blast of Mace."  (Compl. ¶ 12; Pl. Dep. 79:1-2.)  The Plaintiff claims that "[a]s Wright was attacking [me], Sears was yanking and pulling back on the leash, preventing [my] attempts of getting away from the blunt force of the spray, causing the handcuffs to dig/cut into [my] wrist."  (Compl. ¶ 13.)  Wright claims that Pollen started to pull Sears' hand as Sears attempted to restrain Plaintiff's handcuff leash.  (Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 12.)  The Plaintiff

4

testified that Pollen tried to pull him back into the cell to avoid the pepper spray.  (Pl. Dep. 79:2-7.)

Wright administered a second 2 second spray of pepper spray (the second administration of pepper spray) into the cell to deter Pollen from continuing to flush the drugs down the toilet. (Wright  ¶ 5.)  Wright gave Pollen one last verbal directive to stop his actions and come to the cell door to be handcuffed; Pollen complied and was handcuffed.  (Wright Aff. ¶ 5; Sears Aff. ¶ 3; Incident Report, Dkt. No. 36-2 at 12.)

After Pollen was handcuffed, the inmates were removed from their cell and strip-searched, and their cell was searched for contraband.  (Compl. ¶ 14; Wright Aff. ¶ 5; Sears Aff. ¶ 5; Pl. Dep. 18-19; Incident Report, Dkt. No. 36-2 at 12.)  A black and grey Samsung Verizon cell phone and a charger were found in Pollen's shoe.[4]  (Wright Aff. ¶ 5; Sears Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 12; Use of Force Report, Dkt. No. 36-2 at 13.)  No drugs were found. (Wright Aff. ¶ 5.)  In total, Wright discharged two 2 second bursts of pepper spray into the cell. (Wright Aff. ¶ 5.)

Both inmates were seen in the SMU by LCI Nurse Rachel Laddaga ("Laddaga"). (Compl. ¶ 12; Wright Aff. ¶ 5; Sears Aff. ¶ 5; Pl. Dep. 19-20; Incident Report, Dkt. No. 36-2 at 12; Use of Force Report, Dkt. No. 36-2 at 13; Laddaga Aff. ¶ 8, Dkt. No. 36-9.)  The Plaintiff alleges he "cried in pain" and told the nurse of the allergic reaction he had had from Mace, and pleaded for a shower and for his eyes to be flushed.  (Compl. ¶ 15.)  The nurse told him to "just wash your eyes with some milk, it works better than water, and if your eyes swells [sic] again you'll be okay it's not life threatening."  (Compl. ¶ 15.)

---

[4] Sears states that two cell phones and a phone charger were found.  (Sears Aff. ¶ 5.)

The Plaintiff's SCDC Health Services Medical Records ("Medical Records") indicate that upon examination by Laddaga at approximately 1:14 a.m. on June 8, 2012, the Plaintiff complained of blurry vision, burning eyes, and shortness of breath; he said he had a history of asthma and the pepper spray "[was] making it act up." (Laddaga Aff. ¶ 9; Med. R. at p. 15, Dkt. No. 36-3.) Laddaga examined the Plaintiff and found no signs or symptoms of distress (Med. R. at p. 15) "and found no evidence that [the Plaintiff] was suffering from an Asthma attack or was otherwise in distress[.]" (Laddaga Aff. ¶ 9.) The Plaintiff's oxygen saturation was measured at 99% on room air. (Med. R. at p. 15.) Laddaga told the Plaintiff that the burning sensation could last for several hours (Med. R. at p. 15) and instructed him to notify Medical if his symptoms worsened. (Laddaga Aff. ¶ 9; Med. R. at p. 15.) The Plaintiff contends he was not allowed to wash his face between the time he was seen by the nurse and the time he was returned to his cell. (Pl. Dep. 81:8-11.)

After the Plaintiff and Pollen were seen by Laddaga, Wright returned the inmates to their cell. (Incident Report, Dkt. No. 36-2 at 12.) According to the Plaintiff, Wright returned the inmates to their stripped-out cell, stripped both men naked, and "had the water in the cell turned off for 72 hours." (Compl. ¶ 16.) Wright has averred: "I did not restrict Plaintiff's access to running water in their cell, as alleged." (Wright Aff. ¶ 5.)

The Plaintiff states that for three days, he and Pollen had to eat with their hands, drink from a small slot on the food tray, sleep in the nude on steel beds, and use a toilet that was without water for flushing. (Compl. ¶ 16.) In his deposition, the Plaintiff stated that he did not want to rinse his face with toilet water. (Pl. Dep. 81:17-19.) The Plaintiff was permitted to shower after 72 hours. (Pl. Dep. 81:21-25.)

6

As a result of Wright's administration of pepper spray, the Plaintiff contends that for "about three (3) weeks," he suffered "random nose bleeds, swelling of the face, the humiliation, embarrassing comments and harassing statements by other Inmates/Guards." (Compl. ¶ 17.) The Plaintiff testified that after the incident, he had headaches for a month or two, and "periodic" nosebleeds for a month (Pl. Dep. 109:2-3, 109:21-24) and that the physical effects of the pepper spray lasted for a month or two after the incident. (Pl. Dep. 110:8-11.) With respect to psychological effects of the incident, the following colloquy occurred:

> Q. How about any other damages that you are claiming: Mental issues, psychological issues. Are you claiming anything in relation to that?
> A. No, sir.

(Pl. Dep. 110:12-15.)

After the incident, the Plaintiff did not ask to be seen by Health Services again; the Medical Records reflect that he was not seen by Health Services again until August 6, 2012. (Med. R. at p. 14.)

Wright filed an Incident Report and a Use of Force Report, and reported the incident to his supervisor. (Wright Aff. ¶ 5; Incident Report, Dkt. No. 36-2 at 11-12; Use of Force Report, Dkt. No. 36-2 at 13-14.) The Use of Force Report contained a section which was completed by Laddaga and which set forth essentially the same narrative as that contained in the Medical Records. (*Cf.* Med. R. at 15 *with* Use of Force Report, Dkt. No. 36-2 at 13.)

The Plaintiff was charged with possession of marijuana and possession of a cell phone, and found guilty of possession of a cell phone. (*See* SCDC Record Summary Report for Plaintiff, Dkt. No. 36-2 at 4; Incident Report, Dkt. No. 36-2 at 11; Plaintiff's SCDC Disciplinary Report and Hearing Record, Dkt. No. 36-2 at 19; Pl. Dep. 52:7-23, 53:17-18.) Pollen was

charged with possession of marijuana and possession of a cell phone, and found guilty of both

charges. (*See* Pollen's SCDC Disciplinary Report and Hearing Record, Dkt. No. 36-2 at 20; Pl.

Dep. 52:24–53:8; Wright Aff. ¶ 5.)

## PROCEDURAL HISTORY

### A. Exhaustion of Administrative Remedies

On June 17, 2012, the Plaintiff filed a Step 1 grievance, LCI-1254-12, alleging that

Wright had acted unprofessionally and had inflicted cruel and unusual punishment in violation of

the Eighth Amendment when he "maliciously sprayed" 225 grams of pepper spray into the

Plaintiff's cell without cause, and while the Plaintiff was handcuffed.[5] (Step 1 Grievance Form,

Dkt. No. 36-4 at 11.) The grievance did not make any allegations against Sears, or the Defendant

Robert Word ("Word") or the Defendant Joseph McFadden ("McFadden"). (*Id.*). On August 7,

2012, LCI's Institutional Grievance Coordinator ("IGC") forwarded the grievance to the Division

of Investigation ("DOI") because of the allegations made against a correctional officer; the DOI

returned the grievance to be processed through the Grievance System. (*Id.*). On October 26,

2012, McFadden denied the grievance, stating that SCDC documents showed that the Plaintiff

had refused to comply with Wright's orders, which necessitated the use of pepper spray; further,

on June 21, 2012, the Plaintiff had been found guilty of Possession of Narcotics and Possession

of a Cell Phone in connection with the June 8, 2012 incident.[6] (Step 1 Grievance Form, Dkt. No.

---

[5] Although the complaint states that the grievance was filed against both Wright and Sears, a review of the Step 1 Inmate Grievance Form indicates that only Wright is named in the document. *Cf.* Compl. ¶ 18 *with* Inmate Grievance Form, Dkt. No. 36-4 at 11.

[6] This statement appears to be incorrect. The Plaintiff was charged with both offenses, but found guilty only of possession of a cell phone. (*See* SCDC Record Summary Report for Plaintiff, Dkt. No. 36-2 at 4; Incident Report, Dkt. No. 36-2 at 11; Plaintiff's SCDC Disciplinary Report and Hearing Record, Dkt. No. 36-2 at 19.)

36-4 at 12.)  On November 1, 2012, the Plaintiff appealed McFadden's decision by filing a Step

2 grievance.  (Step 2 Grievance Form, Dkt. No. 36-4 at 13.)  Word denied the Step 2 grievance

on April 11, 2014.  (*Id.*).

## B. The Previous Federal Action

Before Word issued his denial of the Step 2 grievance, the Plaintiff and Pollen filed an

action in the Court of Common Pleas for Dorchester County captioned as *Gilbert et al. v. Byers*

*et al.,* 2013-CP-18-01075, alleging several incidents of alleged excessive force at LCI, including

the June 8, 2012 incident.  On August 8, 2013, the case was removed to the United States District

Court for the District of South Carolina.  *Gilbert et al. v. Byars et al.*, 2:13-02163-MGL ("*Gilbert*

*I").*[7]  On July 18, 2014, Magistrate Judge Wallace W. Dixon issued a Report and

Recommendation which recommended that the Plaintiff's action be dismissed without prejudice

because he had not exhausted his administrative remedies prior to filing suit, and that Pollen be

dismissed from the action with prejudice for failure to prosecute and failure to obey court orders.

(*Id.*, Dkt. No. 79.)  On August 14, 2014, the District Court adopted the Report and

Recommendation (*Id.*, Dkt. No. 82), and the District Court's decision in *Gilbert I* was affirmed

by the Fourth Circuit Court of Appeals in a per curiam opinion issued on January 27, 2015.  *(Id.*,

Dkt. No. 91.)  On August 31, 2015, the Plaintiff filed the present action, which focuses solely on

the June 8, 2012 incident.[8]

---

[7] The court may take judicial notice of its own records.  *See Aloe Creme Labs., Inc. v. Francine
Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (per curiam).

[8] Pursuant to *Houston v. Lack*, 487 U.S. 266, 270 (1988), a state prisoner's *pro se* pleading is
"filed" at the moment of delivery to prison authorities for forwarding to the District Court.
(Envelope, Dkt. No. 1-3.)

9

## STANDARDS OF REVIEW

### A. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Thus, the Plaintiff is to "have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### B. The *Pro se* Pleading

The court is required to liberally construe *pro se* documents, *Estelle v. Gamble,* 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe,* 449 U.S. 5, 9-10 (1980) (per curiam). The mandated liberal construction afforded *pro se*

10

pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  Further, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990).

## **ANALYSIS**

### **A.  Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e, provides in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Relying on this statute, the Defendants argue that the Plaintiff's action is barred for failure to exhaust administrative remedies because he "did not fully complete the grievance process prior to the initiation of this action, or even initiate the grievance process with regard to Defendants Sears, W[o]rd, and McFadden."  ( Def.s' Mem. 13, Dkt. No. 36-1.)

With respect to the Defendant's first argument, the record reflects that the Plaintiff filed a Step 1 grievance on June 17, 2012, and on October 26, 2012, McFadden denied the grievance. (Step 1 Grievance Form, Dkt. No. 36-4 at 11-12.)  On November 1, 2012, the Plaintiff appealed

McFadden's decision by filing a Step 2 grievance. (Step 2 Grievance Form, Dkt. No. 36-4 at 13.) Word denied the Step 2 grievance on April 11, 2014. (*Id.*) "Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court." *Jones v. Hartwig*, C.A. No. 8:13-334-DCN, 2014 WL 101983, at *5 (D.S.C. Jan. 8, 2014) (citing *Ayre v. Currie*, C.A. No. 0:05-3410-HMH-BM, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, C.A. No. 2:05-2187-DCN-RSC, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006)). Furthermore, the Step 2 grievance form plainly states: "The decision rendered by the responsible official exhausts the appeal process of the Inmate Grievance Procedure." (Step 2 Grievance Form, Dkt. No. 36-4 at 13.) The court finds that the Plaintiff exhausted his administrative remedies prior to initiating this action. *See Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005) (Exhaustion is a prerequisite to suit that must be completed prior to filing an action.).

Second, the fact that the Plaintiff did not name Word, McFadden, and Sears in his Step 1 grievance (No. LCI 1254-12) does not bar him from suing those persons in this action. In 2007, the United States Supreme Court addressed the issue of whether prison grievances must name particular defendants in order to satisfy the PLRA's exhaustion requirements as against those defendants, and held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Id.* at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Subsequently, the Fourth Circuit held that a plaintiff did not have to identify specific individuals when filing a grievance if the

12

prison grievance procedure did not require such identification. *Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008). After *Bennette*, the District Court held that "nothing in the SCDC's policies and procedures required Plaintiff to identify specific individuals in his grievance." *Sturkey v. Stirling*, C.A. No. 2:13-3451-RMG, 2014 WL 6460285, at *5 (D.S.C. Nov. 17, 2014) (citing SCDC Policy GA-01.12 (Inmate Grievance System)). Therefore, despite the fact that Word, McFadden, and Sears were not identified in Grievance No. LCI 1254-12, this action may be brought against them.

### B. Statutes of Limitation

The Defendants argue in their Memorandum in Support of their Motion for Summary Judgment that the Plaintiff's action is barred by § 1983's three-year statute of limitations. (Defs.' Mem. 9-11, Dkt. No. 36-1.) They address the statute of limitations with respect to the claims alleged pursuant to the SCTCA in their Reply, filed with the court on June 13, 2016. (Dkt. No. 53.)

### 1. The SCTCA

The SCTCA "provides a two-year statute of limitations for personal-injury torts alleged against employees of state agencies, such as SCDC." *Wilder v. Byars*, C.A. No. 3:12-1743-CMC-JRM, 2013 WL 3155619, at *3 (D.S.C. June 20, 2013) (*citing* S.C. Code Ann. § 15-78-110)). Exhaustion of the SCDC's administrative remedies is not required before filing an action pursuant to the SCTCA. *Buff v. S.C. Dep't of Corr.*, C.A. No. 5:13-01901-TLW-KDW, 2014 WL 3867996, at *4 (D.S.C. Aug. 6, 2014) (citing S.C. Code Ann. § 15-78-80(f)). "Therefore, the two-year SCTCA statute of limitations is not tolled while plaintiffs pursue administrative remedies." *Id.*

As noted above, the incident at issue occurred on June 8, 2012, and the Plaintiff filed his complaint in this action on August 31, 2015 against the Defendants.  He specifically alleged that Word and McFadden exhibited "gross negligen[ce]" in the performance of their official duties because they failed to timely respond to the Plaintiff's grievances.[9]  (Compl. ¶¶ 4-5; Pl. Dep. 60:24–62:3.)  The court finds that the Plaintiff's state law gross negligence claims against Word and McFadden are barred by the SCTCA's two year statute of limitations.  Likewise, the Plaintiff's claims against Wright and Sears for gross negligence, and for "Assault/Battery" (Compl. ¶¶ 6-7) are barred by the SCTCA's statute of limitations.  Therefore, it is recommended that these state law causes of action be dismissed.

### 2.  Section 1983

Turning to the Plaintiff's federal constitutional claims pursuant to § 1983, the text of that statute does not set forth a specific statute of limitations.  However, the United States Supreme Court has held that a "state's general statute of limitations for personal injury claims applies, even if the state has different statutes of limitation for intentional torts."  *Brannon v. Blanton*, C.A. No. 9:15-2434-CMC, 2016 WL 4232886, at *2 (D.S.C. Aug. 11, 2016) (citing *Owens v. Okure*, 488 U.S. 253, 249-50 (1989) ("We accordingly hold that where state law provides multiple statutes of limitation for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.") (appeal dismissed, No. 16-7282, Jan. 3, 2017)).  Therefore, the court must look to state law with respect to the statute of limitations.  *Wilder*, 2013 WL 3155619, at *3 (*citing Wilson v. Garcia,* 471 U.S. 261, 266

---

[9] The Plaintiff does not allege claims of excessive force in violation of the Eighth Amendment against Word or McFadden.  (Compl. Pl. ¶¶ 4-5; Dep. 60:24–62:3.)

(1985)), superseded by statute on other grounds as stated in *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004)); *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991) (internal citations omitted) (As "there is no federal statute of limitations applicable to suits under § 1983, it is the rule that the applicable [statute of limitations] must be borrowed from the analogous state statute of limitations").  In South Carolina, the general statute of limitations for a personal injury claim is three years.  *See* S.C. Code Ann. § 15-3-530; *see also Hamilton v. Middleton*, C.A. No. 4:02-1952-[PMD], 2003 WL 23851098, at *4 (D.S.C. June 20, 2003) ("The statute of limitations for section 1983 causes of action arising in South Carolina is three years.") .

The Fourth Circuit has not yet addressed whether a state statute of limitations for a 1983 action is tolled during the exhaustion of administrative remedies.  *King v. McPherson*, C.A. No. 0:15-2358-RBH, 2016 WL 4523465, at *4, n.3 (D.S.C. Aug. 29, 2016).  However, "§ 1983 actions incorporate state tolling rules, including S.C. Code Ann. § 15-3-100, which directs that a statute of limitation should be tolled where a plaintiff is statutorily prohibited from pursuing a cause of action."  *Gunnells v. Goodman*, C.A. No. 8:14-1978-MGL, 2016 WL 768845, at *1 (D.S.C. Feb. 29, 2016).  "[W]hile the Fourth Circuit has not yet spoken to the precise interaction between § 15-3-100 (the state tolling statute) and § 1997(e) (requiring exhaustion of administrative remedies), it is very probably that the circuit court would find that the three year statute of limitations governing § 1983 actions should properly be tolled during the period of time during which § 1983 inmate-plaintiffs are statutorily required to exhaust their administrative remedies."  *Id.*; *see also King v. McPherson*, 2016 WL 4523465, at *4 (citing *Gunnells* with approval).

The time that the statute of limitations is tolled extends until the date on which the inmate-plaintiff is due a final response to his grievance, not the date when prison officials actually respond to the grievance. *King v. McPherson,* 2016 WL 4523465, at *4 (citing *Gunnells*, 2016 WL 768845, at *2). The SCDC "affords 180 days as the maximum period of allotted time for any inmate grievance." *King v. McPherson,* 2016 WL 4523465, at *4 (citing *King v. Ozmint*, C.A. No. 0:11-01455-RBH, 2013 WL 4680532, at *5 (D.S.C. Aug. 30, 2013)). Applying this rule to the present case, the Plaintiff had three years, plus 180 days, from June 8, 2012 to file this action. *See, e.g., King v. McPherson,* 2016 WL 4523465, at *4 (calculating that the plaintiff "had, at most, three years and 180 days to file this lawsuit because he filed a grievance with SCDC regarding this incident."). As the incident at issue occurred on June 8, 2012, and the Plaintiff's § 1983 action was filed on August 31, 2015, the action was filed within the applicable statute of limitations.

### C. The Plaintiff's Claims Against Word and McFadden

As mentioned previously, the Plaintiff alleges that Word and McFadden exhibited "gross negligen[ce]" in the performance of their official duties when they failed to timely respond to the Plaintiff's grievances in violation of SCDC Policy/Procedure. (Compl. ¶¶ 4-5, 18-21.) The court already has recommended dismissing Word and McFadden from this action because, as to these persons, the action is barred by the SCTCA's statute of limitations. It also is recommended that Word and McFadden be dismissed from this action because any alleged violation of SCDC policies by these persons does not state a violation of any constitutional right. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citations

omitted).  Thus, "to the extent Plaintiff's claim is that the [SCDC] failed to follow its own policies and procedures . . . , this assertion . . . fails to set forth a claim of constitutional magnitude, as the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation.  *Johnson v. Ozmint*, 567 F. Supp. 2d 806, 823 (D.S.C. 2008) (citing *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983)); *see also Johnson v. S.C. Dep't of Corr.*, C.A. No. 3:06-2062-CMC-JRM, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation.").  Therefore, the Plaintiff's claim is without merit, and it is recommended that Word and McFadden be dismissed from this action for this reason, too.

### D.  The Plaintiff's § 1983 Claims Against Wright and Sears

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).  In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations."  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The court construes the Plaintiff's complaint as alleging claims of excessive force by Wright and Sears in violation of his rights under the Eighth and Fourteenth Amendments.

17

(Compl. ¶¶ 6-7.)  The Eighth Amendment prohibits the infliction of cruel and unusual

punishment.  U.S. CONST. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (noting

that prison conditions and inmate treatment must be assessed under the Eighth Amendment);

*Whitley v. Albers*, 475 U.S. 312, 319-21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36

(2010) (per curiam); *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996).  To establish a

viable Eighth Amendment claim, an inmate must show that the "'prison official acted with a

sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or

injury inflicted on the inmate was sufficiently serious (objective component).'"  *Iko v. Shreve*,

535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams*, 77 F.3d at 761).  "These requirements

spring from the text of the amendment itself; absent intentionality, a condition imposed on an

inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be

called 'cruel and unusual.'"  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To satisfy the subjective component–that the official had a sufficiently culpable state of

mind–the official must have demonstrated "deliberate indifference."  *De'lonta v. Angelone*, 330

F.3d 630, 634 (4th Cir. 2003) (citing *Farmer*, 511 U.S. at 825).  In other words, a plaintiff must

show that "the measure taken inflicted unnecessary and wanton pain and suffering" by showing

the force was applied "maliciously and sadistically for the very purpose of causing harm" as

opposed to "in a good faith effort to maintain or restore discipline."  *Whitley*, 475 U.S. at 320

(citations omitted).  In *Whitley*, the United States Supreme Court identified four factors that a

court must weigh when determining whether a prison official's actions were carried out

"maliciously and sadistically" to cause harm:  (1) the necessity of the force; (2) "the relationship

between the need and the amount of force"; (3) "the extent of the injury inflicted"; and (4) "the

18

extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

To establish the objective component, a plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (quoting *Wilson,* 501 U.S. at 303). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.*; *see also Wilkins*, 559 U.S. at 37. With these standards in mind, the court turns to the facts of the case.

The court finds, with respect to Wright, that the first administration of pepper spray may have been a use of force that violated the Plaintiff's Eighth Amendment rights. Likewise, Sears' restraint of the Plaintiff during Wright's first administration of pepper spray may have been an unconstitutional use of force, under the circumstances. "[A]lthough it is not *per se* unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment.'" *Williams*, 77 F.3d at 763 (quoting *Bailey v. Turner,* 736 F.2d 963, 969 (4th Cir. 1984)).

Accepting as true the Plaintiff's version of the facts, Pollen and Wright had a verbal altercation; the Plaintiff was lying in bed, and Wright ordered him out of bed and told him to come to the cell door. The Plaintiff complied with that order. Then, Wright said: "I've been looking for a reason to get you two again . . . ." Taken in the light most favorable to the Plaintiff,

Wright's statement suggests that he was acting with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 238. Wright called for assistance, and the Plaintiff complied with Wright's or Sear's verbal order to back up to the window to be handcuffed. Based on these facts, it appears that the Plaintiff complied with the verbal directives, and did not provoke Wright so as to create a need to use force. Furthermore, although Wright and Sears claim they saw Pollen flushing marijuana down the toilet, no drugs were found in the cell. After Sears handcuffed the Plaintiff, Sears held on to the leash attached to the Plaintiff's handcuffs. Then, Wright "attacked [the Plaintiff] from behind by spraying him with a prolonged blast of Mace." (Compl. ¶ 12; Pl. Dep. 77:25-78-18.) Applying the *Iko* factors, at this point, the Plaintiff was handcuffed, so the force that Wright used must have been to gain compliance from Pollen, who was further away from the door. It is not clear to the court that the use of force at this time was necessary. Second, the amount of force seems excessive, at least with respect to the Plaintiff, given his close proximity to Wright's pepper spray, and the fact that he could not move away from the door because he was tethered by the leash. The Plaintiff has testified to this use of force:

> That at no time during the incident stated within the Complaint was I loud, biostrous, [sic] using any kind of fighting words, being disorderly, causing a disturbance, or any other form of overt misbehavior, nor did I make any threatening gestures of any kind, directly or indirectly, nor did I violate any State Prison Polic[y] or rules for the wanting of, any physical, chemical, or any other type of force to be applied.

 (Pl. Aff. 1-1.) Next, the court must examine the extent of the injury that the Plaintiff received. Although the Plaintiff was seen by a nurse, he was not permitted to wash his face at that time, he was put in a stripped-out cell, and, although it is disputed, Wright may have turned off the water in his cell for 72 hours. The Plaintiff claims he was not permitted to shower or wash his face for 72 hours. The Medical Records show that the Plaintiff did not ask to be seen by Medical after

being examined by Laddaga on the night of the incident, which suggests that the Plaintiff was not injured. However, the court's inquiry must focus on the nature of the force, not the extent of the injury. *Wilkins*, 559 U.S. at 39 (holding that automatic dismissal of an excessive force claim based on de minimus injury improperly bypasses the core inquiry into the nature of the force.).

Finally, the court must examine "the extent of the threat to the safety of staff and inmates . . . ." *Whitley*, 475 U.S. at 321. The Plaintiff and Pollen were locked in their cell, and thus posed no threat to the safety of the guards or the other inmates. The court is mindful that in *Mann v. Failey*, 578 F. App'x 267 (4th Cir. 2014) (per curiam), a panel of the Fourth Circuit held that summary judgment was precluded when the record demonstrated that a prisoner who had been maced was in pain for several hours and officers refused to allow him to decontaminate. *Id.* at 269-71. The Fourth Circuit held that the district court erred in "rel[ying] on the absence of certain evidence, namely the fact that the official prison records do not contain any complaints of injury, or any evidence suggesting that Plaintiff lacked running water with which he could have decontaminated himself." *Id.* at 274 (quotation marks and citation omitted). The Court found that the testimony of Mann and other inmates was sufficient to create a genuine issue of material fact and that the issue should have been presented to a jury. *Id.* at 272. The Fourth Circuit also observed that "a lack of injury is not dispositive, so long as there is sufficient evidence of maliciously-applied force." *Id.; see also Williams*, 77 F.3d at 761, 764-68 (holding, in the excessive force context, that an inmate's sworn testimony concerning correctional officers' refusal to allow him to wash or receive medical attention after being "maced" precluded summary judgment).

Viewing the facts in the light most favorable to the Plaintiff, as the court is constrained to do at this time, it finds there is a genuine issue of material fact as to whether the Plaintiff "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," as to the first administration of pepper spray on June 8, 2012, and this court recommends that the Defendants' Motion for Summary Judgment as to Wright and Sears be denied as to this issue.

### E.  The Defendants' Assertion of Eleventh Amendment Immunity

The court finds that the Defendants are entitled to immunity under the Eleventh Amendment to the extent that the Plaintiff's claims were brought against them in their official capacities.[10]  The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of the States' sovereign immunity found in the Eleventh Amendment.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989).  As the Supreme Court stated in *Will*:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will*, 491 U.S. at 66 (citation omitted).  Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (citations omitted), because "a

---

[10] The Plaintiff's complaint states, as to each Defendant, that "he is being sued in his individual capacity for the gross negligen[ce] of his official duties[.]" (Compl. ¶¶ 3-7.)

suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Thus, to the extent that the Plaintiff's claims against Wright and Sears are alleged against them in their official capacities, those claims are barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71.

However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."). To the extent the Plaintiff's claims are against Wright and Sears in their individual capacities, the Eleventh Amendment does not bar suit.

### F. The Plaintiff's Rule 56(d) Motion

The Plaintiff filed a motion pursuant to Rule 56(d), stating that he could not present other facts or evidence to support his opposition to the Defendants' Motion for Summary Judgment. (Dkt. No. 66.) The Plaintiff claims he cannot obtain an affidavit from Pollen because, at the time he filed the motion (November, 2016), he was on lockdown, and further, when the case initially was filed in 2015, he and Pollen were not in the same dorm. (Dkt. No. 66-1 at 1.) He also states that he asked the Defendants' counsel for a copy of Pollen's deposition transcript, but that counsel has objected to providing it. (Dkt. No. 66-1 at 2.)

The court is not clear as to the relief the Plaintiff is seeking through this motion, although it may be that the Plaintiff is asking the court to defer making a recommendation at this time. In

any event, the Defendants have construed this motion as one seeking an order of summary judgment in favor of the Plaintiff, and have filed an memorandum in opposition thereto.  (Dkt. No. 70 at 1.)

The court finds that the Plaintiff has had abundant time to obtain any documentation he thought he would need in support of his case, given the fact that the incident at issue happened over five years ago.  Accordingly, the court recommends that the Plaintiff's Rule 56(d) motion be denied.

## CONCLUSION

Wherefore, it is **RECOMMENDED** that the Defendants' Motion for Summary Judgment (Dkt. No. 36) be **GRANTED** in part and **DENIED** in part.  Specifically, it is recommended that the Defendants' Motion be DENIED with respect to the Plaintiff's June 8, 2012 excessive force claims against Wright and Sears.  It is recommended that the Defendants' Motion be GRANTED as to all other claims.  It further is **RECOMMENDED** that the Plaintiff's Rule 54(d) motion (Dkt. No. 66) be **DENIED**.


IT IS SO RECOMMENDED.


January 26, 2017

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).