

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BOBBY GILBERT, | § | |
|       Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:15-3535-MGL-MGB |
| | § | |
| ROBERT E. WORD, JOSEPH | § | |
| MCFADDEN, DANTE WRIGHT, and | § | |
| THOMAS SEARS, | § | |
|       Defendants. | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
AND DENYING PLAINTIFF'S FED. R. CIV. P. 54(D) MOTION**

      Plaintiff brings claims under 42 U.S.C. § 1983 and the South Carolina Tort Claims Act, promulgated at S.C. Code Ann. § 15-78-10 through 15-78-220.   He seeks both compensatory and punitive damages.   Plaintiff is proceeding pro se.

      The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting Defendants' motion for summary judgment be granted in part and denied in part.   Specifically, the Magistrate Judge recommends Defendants' motion be denied as to Plaintiff's June 8, 2012, excessive force claims against Defendants Wright and Sear and granted as to all other claims.   The Magistrate Judge also suggests Plaintiff's Fed. R. Civ. P. 54(d) motion be denied.   The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on January 26, 2017, and Defendants filed their objections on February 20, 2017. The Court notes Plaintiff failed to file any objections to the Report. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Moreover, a failure to object waives appellate review. *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir. 1985). The Court is satisfied there is no clear error on the face of the record as it relates to Plaintiff's claims. Thus, it will adopt those portions of the Report unfavorable to Plaintiff without further discussion.

First, Defendants object to the Magistrate Judge's discussion of Defendant Wright's second administration of pepper spray because, according to Defendants, "these factual allegations . . . are not relevant to the actual recommendations of the Report." Objections 2 n.3. Although it is the first administration of pepper spray, and not the second one, at issue here, the Magistrate Judge evidently provided this information to give the Court a brief overview of the all of the relevant facts. Defendants are in no way harmed by the recitation. Consequently, the Court will overrule this objection.

Second, "Defendants object to the recommendation that Plaintiff properly and fully exhausted his administrative remedies prior to filing this action. Specifically, Defendants object to that portion of the Report that analyzes exhaustion of administrative remedies with regard to Defendant Sears." *Id*. at 5.

The Court has reviewed Plaintiff's Grievance No. LCI 1254-12, the gravamen of which is: "[o]n 6-8-2012 at about 12:25 a.m. Lt. Wright came to Mr. Gilbert's cell (247 B-wing of SMU) and maliciously sprayed 225 grams mace chemicals into Mr. Gilberts face, head, and back, without just cause, w[h]ile Mr. Gilbert was in handcuffs." ECF No. 36-4 at 11. The Court agrees with Defendants to the extent Plaintiff's grievance fails to state any allegations against Defendant Sears or describe any conduct attributable to him. As such, the Court concludes Plaintiff neglected to exhaust his administrative remedies as to Defendant Sears and thus will dismiss Defendant Sears from this action.

Third, "Defendants object to the provisions of the Report that recommend that Defendants' Motion for Summary Judgment should be denied as to Defendants Wright and Sears in their individual capacities." Objections 7 (emphasis omitted). "Specifically, Defendants object to the Report's recommendation that Plaintiff has set forth sufficient evidence to constitute a genuine issue of material fact as to whether he was deprived of a right, privilege, or immunity secured by the Constitution of laws of the United States in relation to the allegations of excessive force against Defendants Wright and Sears." *Id*. (emphasis omitted). Because the Court has dismissed Defendant Sears from this action due to Plaintiff's failure to exhaust administrative remedies as to claims against him, the Court will address only the allegations with respect to Defendant Wright. At the summary judgment stage, a court must view the facts in the light most favorable to Plaintiff, the non-moving party. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (stating,

in an excessive force case, the inmate was to "have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him" (citation omitted)).

To state an Eighth Amendment claim, an inmate must demonstrate: (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir.1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the objective component, the inmate must demonstrate the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). With respect to the subjective component, the inmate must show "wantonness in the infliction of pain.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

When determining whether the pain inflicted was unnecessary and wanton, the Court should consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (citation omitted). "Such factors as the need for application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that ultimate determination." *Id.*, 475 U.S. at 321 (alteration in original omitted) (citation omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citation omitted).

The Magistrate Judge recommended Defendant Wright be denied summary judgment on Plaintiff's Eighth Amendment claims, concluding Defendant Wright's first use of pepper spray, administered after Plaintiff had complied with a verbal directive to present himself at the cell

window to be handcuffed, could be considered the excessive use of force.  Report at 21-22.  The Court agrees with this suggestion.

According to Plaintiff's complaint, after Defendant Wright opened the cell's food serving window, Defendant Wright ordered Plaintiff's cell mate and Plaintiff to stand against the cell wall, and the inmates complied.  Comp. ¶ 11, Dkt. No. 1.  Then, Defendant Wright said, "I've been looking for a reason to get you two again, now that you've given me the chance, I will do this the right way.  It's not going to be like the last time, you will get charged for this one!"  *Id.*  Defendant Wright does not directly deny he threatened Plaintiff and his cell mate, but avers: "I deny all of Plaintiffs' allegations that claim that I continued to harass them and threaten their lives."  Defendant Wright's Aff. ¶ 6, Dkt. No. 36-7.

Defendant Wright claims when he looked into the cell, he saw Plaintiff using a contraband cell phone, and radioed for assistance.  Wright Aff. ¶ 5.  Plaintiff's complaint fails to mention a cell phone, but in his deposition, he stated he was in bed, and his cell mate was using a cell phone.  Pl.'s Dep. 77:6-7.  After Defendant Sears and others responded to Defendant Wright's call for assistance, Defendant Wright ordered Defendant Sears to handcuff Plaintiff.  Comp. ¶ 12.

Plaintiff testified: "So [Defendant Sears] was like back up and get cuffed, so I backed up to the door, put my hands behind my back and [Defendant Sears] put me in handcuffs."  Pl.'s Dep. 78:11-13.  Defendant Sears held onto Plaintiff's handcuffs with a two-foot leash.  Pl.'s Dep. 78:24-25.  Plaintiff alleges: "Immediately after the handcuff was on [me] [Defendant] Wright attacked [me] from behind by spraying [me] with a prolonged blast of Mace."  Comp. ¶ 12.  Plaintiff could not move away from the door because Defendant Sears was holding on to the leash.  Pl.'s Dep. 79:14-16.  Defendant Wright states he administered a second burst of pepper spray into

5

the cell to prevent Plaintiff's cell mate from flushing a green leafy substance down the toilet. Defendant Wright's Aff. ¶ 5.  When the room was searched, however, no drugs were found.  *Id.*

In an excessive force case such as this, Plaintiff must prove Defendant Wright applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline.  *Whitley*, 475 U.S. at 320-21.  "[A]lthough it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment.'"  *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984)).

In *Hudson*, the Supreme Court, relying on *Whitley*, articulated four factors the Court must consider when determining whether the use of force was wanton and unnecessary: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  503 U.S. at 7.  As one district court recently observed: "There are three general categories in which courts have held that use of pepper spray or other chemical agents may constitute excessive force."  *Wheeler v. Fritz*, C.A. No. RBD-14-2727, at *10, 2015 WL 4485436 (D. Md. July 20, 2015).  The first category is "when an officer used far more than a reasonable quantity of a chemical agent;" the second category is "when a chemical agent was used without a prior verbal order, or after a prisoner had been subdued or had become compliant;" and the third category is "when, after a prisoner is pepper sprayed (even for a legitimate reason), officers then withhold appropriate medical attention."  *Id.* (citations omitted).

6

Viewing the sequence of events in the light most favorable to Plaintiff, as the non-moving party, the Court holds Defendant Wright's threat to Plaintiff, Plaintiff's compliance with Defendant Wright's directive to come to the cell window to be handcuffed, and Defendant Wright's discharge of the pepper spray after Plaintiff complied with the directive, and was unable to move away from the window because of the handcuff leash, suggests Defendant Wright used excessive force against Plaintiff.

Taking Plaintiff's allegations as true, Plaintiff has alleged sufficient facts suggesting Defendant Wright maliciously sprayed Plaintiff with pepper spray to harm him, as he had already complied with the order to allow himself to be handcuffed.  *See*, *e.g.*, *Taylor v. Lang*, No. 12-6069, 2012 WL 2354460, at *2 (4th Cir. June 21, 2012) (per curiam) (reversing grant of summary judgment to officer where, during the course of an argument, an officer pepper sprayed an inmate's face "despite the fact that [the inmate] was complying with [the officer's] various directives and was not acting in an aggressive or threatening manner").

Next, the Court will consider whether Plaintiff's inability to decontaminate himself for seventy-two hours, allegedly because Defendant Wright had the water turned off in the cell, constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff alleges after Defendant Wright deployed the pepper spray, Plaintiff was seen by medical, and Plaintiff "pleaded for a shower and for his eyes to be flushed."  Compl. ¶ 15.  The nurse told him to wash his eyes with milk because it worked better than water.  *Id.*  The medical records reflect Plaintiff complained his eyes burned and his vision was blurry.  Pl.'s Med. R. at p. 15 (June 8, 2012), Dkt. No. 36-3.  The medical records do not indicate Plaintiff was allowed to wash his eyes.  *Id.*

Plaintiff testified he was not allowed to wash his face between the time he was taken to medical and the time he was returned to his cell.  Pl.'s Dep. 81:8-13.  Plaintiff and his cell mate

were returned to their stripped-out cell, and Defendant Wright "had the water in the cell turned off for 72 hours." Compl. ¶ 16. Defendant Wright avers he "did not restrict Plaintiff's access to running water in their cell." Defendant Wright's Aff. ¶ 5, Dkt. No. 36-7. Viewing the facts in the light most favorable to Plaintiff, however, the Court holds there is a genuine issue of fact as to whether the water in Plaintiff's cell had been turned off based on Plaintiff's testimony he was unable to rinse his face for 72 hours because the only water available to him was the water in the toilet, and he did not want to rinse his face with toilet water. Pl.'s Dep. 81:17-20. Plaintiff testified he was not allowed to wash his face until three days later, when he was permitted to take a shower. Pl.'s Dep. 81:14-16.

In *Williams v. Benjamin,* 77 F.3d 756 (4th Cir. 1996), the Fourth Circuit held a prison inmate may bring a Eighth Amendment claim when he is sprayed with chemical munitions and not allowed to wash or decontaminate himself. *Id.* at 768. Likewise, in *Mann v. Failey*, 578 F. App'x 267 (4th Cir. 2014) (per curiam), the Fourth Circuit held there was "ample evidence from which a fact finder could find that [defendants] acted maliciously, sadistically, and in violation of the Eighth Amendment" regarding the plaintiff's claim he was not permitted to wash off the pepper spray officers had used to subdue him. *Id*. at 274. The Court holds there exists a genuine issue of fact as to whether Plaintiff was denied access to running water for 72 hours and thus not able to decontaminate himself. The Court has conducted a de novo review of the Report and the record, and concludes Defendant Wright is not entitled to summary judgment on Plaintiff's Eighth Amendment claims. For these reasons, the Court will overrule this objection.

Fourth, "Defendants object to the Report to the extent that it did not discuss or make recommendations concerning Defendants Wright and Sears qualified immunity defense as presented in their Motion for Summary Judgment and Memorandum in Support." Objections 10

(emphasis omitted).  "Defendants, therefore, respectfully request this Court conduct a de novo review of Defendants Wright and Sears qualified immunity defense as previously and more fully set forth in their Motion for Summary Judgment and Memorandum in Support."  *Id*. (emphasis omitted).

The doctrine of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Qualified immunity shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established rights of which a reasonable person would have known, in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity is an immunity from suit rather than a defense to liability.  *Hunter v. Bryant*, 502 U .S. 224, 227 (1991).  "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It ensures "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The Court will employ a two-step inquiry to resolve Defendant Wright's claim to qualified immunity.  *See Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016).  "The first step is to determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right."  *Id.* (citing *Saucier v. Katz*, 633 U.S.194, 201 (2001)).  "At the

second step, courts determine whether that right was clearly established." *Yates*, 817 F.3d at 884 (citing *Saucier*, 633 U.S. at 201). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Pearson*, 555 U.S. at 236.

In determining whether the right violated was clearly established, the right is defined "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted). In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)).

As previously discussed, Plaintiff's Eighth Amendment excessive force claim has both a subjective component and an objective component. To satisfy the subjective component, Plaintiff must prove Defendant Wright acted with a "sufficiently culpable state of mind." *Johnson*, 145 F.3d at 167 (citations omitted). In other words, when analyzing the subjective component of an excessive force claim, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko*, 535 F.3d. at 239 (citation omitted). As discussed above, there exists a genuine issue of material fact as to whether Defendant Wright's administration of pepper spray into the cell, after Plaintiff complied with

Defendant Wright's orders and had been handcuffed, was done "to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

In *Williams*, which was decided over twenty years ago, the Fourth Circuit held "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." 77 F.3d at 763 (internal quotations omitted). Thus, Plaintiff's right to be free from the excessive use of pepper spray, or the use of pepper spray for the sole purpose of inflicting pain, was well-established at the time of this alleged incident. Therefore, Defendant Wright is not entitled to summary judgment on the grounds of qualified immunity because, if he used his pepper spray against Plaintiff in a "quantit[y] greater than necessary or for the sole purpose of infliction of pain," he had "'fair warning' that [his] conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (citation omitted).

*Williams* also holds that denying an inmate the opportunity to decontaminate himself after being subjected to pepper spray can give rise to an Eighth Amendment claim, 77 F.3d at 768, and thus this right also was clearly established at the time of the alleged incident. Although the facts of *Williams* are not identical to those of the case at bar, the Court must take Plaintiff's allegations as true: Plaintiff was denied access to water, and thus could not wash himself until 72 hours after the incident at issue. Therefore, Defendant Wright is not entitled to summary judgment on the grounds of qualified immunity.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, except as set forth above, adopts the Report to the extent it does not contradict this Order, and incorporates it herein. Therefore, it is the judgment of the Court Defendants' motion for summary judgment is **GRANTED IN PART**

11

**AND DENIED IN PART**, as detailed herein; and Plaintiff's Fed. R. Civ. P. 54(d) motion is **DENIED**.

    **IT IS SO ORDERED**.

Signed this 28th day of February, 2017, in Columbia, South Carolina.

                      /s/ Mary Geiger Lewis
                      MARY GEIGER LEWIS
                      UNITED STATES DISTRICT JUDGE

*****
### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.